IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

        Plaintiff,                          Criminal No. 22-0220
                                                ELECTRONICALLY FILED

    v.

JOSHUA PETERS,

        Defendant.

**OPINION DENYING DEFENDANT JOSHUA PETERS'
MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY**

## I. BACKGROUND[1]

During the first half of March 2022, the Mercer County Drug Task Force, utilizing a

cooperating informant (a "CI"), made two controlled buys of cocaine and fentanyl from Joshua

Peters at his residence in Greenville, Pennsylvania. The first buy occurred on March 7, 2022. It

involved the CI purchasing .76 grams of fentanyl and .89 grams of cocaine, directly from Peters.

ECF 86, ¶ 6.

The second buy occurred on March 13, 2022. It involved the CI purchasing .62 grams of

fentanyl and .63 grams of cocaine, directly from Peters. The second buy, like the first buy,

occurred inside of his residence. ECF 86, ¶ 7.

On March 15, 2022, following the two controlled buys, the Mercer County Drug Task

Force served a search warrant at Defendant's Greenville residence. The search warrant was

served at 6:45 a.m.  Defendant, at first, delayed exiting the residence, despite announcements

from the Special Weapons and Tactics (SWAT) team outside of the residence. He thereafter

---

[1] This Court is intimately familiar with the facts of this case, having presided over the entirety of this
matter, including the jury trial and sentencing hearing, but is reiterating the salient facts of the case herein.

exited the residence as the SWAT team started to make a forced entry into the home. ECF 86, ¶ 8.

After the SWAT team secured the residence, the Mercer County Drug Task Force found 34 grams of cocaine and six firearms inside the residence, along with ammunition. The following guns were found inside the residence: a loaded Glock pistol; a DPMS rifle (a semi-automatic rifle, with a nearby loaded high-capacity magazine); a loaded Remington rifle; an Akkar Silah Sanayi shotgun; a Ruger .357 caliber pistol; and a loaded Ruger .380 caliber pistol. The following ammunition, as well as additional ammunition, was found inside the residence: WIN ammunition; Hornady ammunition; and Triton ammunition. ECF 86, ¶ 9.

The loaded Glock pistol was found resting on the floor in the living room, in a manner consistent with it having been tossed there as entry was being made to serve the search warrant. Two additional loaded magazines for the Glock pistol were found in Defendant's bedroom. In addition, a holster for the Glock pistol was mounted on the side of the nightstand in Defendant's bedroom. The Glock pistol was previously purchased by an associate of Peters, and the purchase documents were in Defendant's bedroom (the associate did not reside with Peters and was not present at the time of the search). ECF 86, ¶ 10.

The 34 grams of cocaine were found in Defendant's bedroom, along with $2,941.00 in United States currency. Distribution paraphernalia (e.g., lottery tickets and plastic baggies), matching the packaging from the controlled buys, was also found in Peters' bedroom, along with a digital scale containing cocaine residue. In addition, a key for a gun cabinet was found in Defendant's bedroom. ECF 86, ¶ 11.

The corresponding gun cabinet was found in the spare bedroom in the residence. This gun cabinet is where the other five firearms listed above were stored. At least one of the guns,

the DPMS rifle, was previously stolen from its owner. Some of the guns that were found in the gun cabinet, including the DPMS semi-automatic rifle and the .357 revolver, were observed in Defendant's bedroom, on occasions in and around March 2022, when he was in the bedroom in possession of cocaine and fentanyl.[2] ECF 86, ¶ 12.

After charging Defendant in the Mercer County Court of Common Pleas with committing state drug trafficking and firearm crimes as a result of the search of his residence on March 15, 2022, Defendant was released on bond. In late August 2022, Defendant was indicted by a federal grand jury adopting the state drug trafficking and firearm charges for federal prosecution. As a result, a federal arrest warrant was issued for Defendant, but on September 2, 2022, when federal and state agents attempted to serve the federal arrest warrant at multiple locations in Mercer County the agents were not able to locate Defendant. After speaking with Defendant via telephone, Defendant told the agents that he would promptly come to the their location to meet them to turn himself in; however, he failed to do so at that time or any other time. ECF 86, ¶ 15-16.

On December 6, 2022, Defendant was found guilty on all three counts charged against him in the federal indictment: at Count One, possession with intent to distribute Cocaine on March 15, 2022; at Count Two, possession of a firearm in furtherance of a drug trafficking crime, on march 15, 2002; and at Count Three, possession of a firearm or ammunition after a prior felony conviction on March 15, 2022. ECF 77.

---

[2] Defendant had a prior felony conviction for Possession with Intent to Distribute Cocaine (see Docket Number 586 CR 2020 below), which prohibited him from lawfully possessing a gun. He was charged and convicted for this prior crime in Mercer County, in 2020, and was sentenced to up to 12 months and two days in jail. ECF 86, ¶ 13.

On April 13, 2023, the Court sentenced Defendant sentenced to a 120-month term of imprisonment at Counts 1 and 3 of the Indictment to run concurrently, and a 60-month term of imprisonment at Count 2 of the Indictment, to run consecutively, for a total term of 180-months, to be followed by a 3-year term of supervised release at each count to run concurrently. ECF 99, ECF 103.

Defendant filed an appeal with the United States Court of Appeals for the Third Circuit (ECF 101), but on March 14, 2024, the Court of Appeals affirmed the Judgment and Amended Judgement of this Court.  ECF 105.  On appeal, Defendant argued: (1) this Court should have granted a mistrial because the Government introduced evidence that Defendant did not conduct forensic testing on the firearms recovered from his residence; (2) the Government failed to present sufficient evidence that Defendant knew he was a convicted felon; and (3) during sentencing this Court erroneously applied the obstruction of justice enhancement under the United States Sentencing Guidelines. In denying Defendant's appeal, the Court of Appeals: (1) determined that this Court did not abuse its discretion in denying Defendant's request for a mistrial; (2) found that the trial evidence demonstrated that Defendant knew he was a convicted felon and therefore, not permitted to possess a weapon; and (3) determined that Defendant, because he attempted to evade arrest, was appropriately assessed the obstruction of justice enhancement during sentencing.  ECF 106-2.

Defendant filed a Petition for Writ of Certiorari, which the United States Supreme Court denied on October 7, 2024. *See Peters. United States of America,* 145 S.Ct. 237 (Oct. 7, 2024). Subsequently, Defendant timely filed the instant motion pursuant to 28 U.S.C. § 2255 (ECF 113), the Government filed its Response to same (ECF 117) and Defendant filed a Reply. ECF 121.  Thus, all matters are now properly before this court and will be discussed below.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Whether to conduct a hearing with respect to a Section 2255 motion is within the sound discretion of the District Court. *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008); *United States v. Day*, 969 F.2d 39, 41 (3d Cir. 1992) (*quoting Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). In exercising that discretion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.

Moreover, the Court must view the factual allegations in the light most favorable to the petitioner. *Government of the Virgin Islands v. Weatherwax*, 20 F.3d 572, 574 (3d Cir. 1994) (district court erred in failing to conduct evidentiary hearing on petitioner's non-frivolous allegations of ineffective assistance of counsel) (subsequent history omitted). However, a Section 2255 Motion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (citations omitted).

Simply stated, the District Court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.

§ 2255(b).  A hearing for unresolved facts is required "where a petition allege[s] any facts warranting relief under § 2255 that are not *clearly resolved* by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing." *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (alterations in original) (emphasis added) (quotation marks omitted).

## III.   DISCUSSION

### A. No Hearing is Required

For the reasons set forth on greater detail below, Defendant is not entitled to a hearing in this case because the facts alleged by Defendant cannot be accepted as true because they are contradicted by the record, are inherently incredible, and state conclusions of law rather than statements of fact.

### B. Defendant's Substantive Claims

Defendant's Brief in support of his Motion to Vacate (ECF 113) and his Reply Brief (ECF 121) set forth three bases upon which his request for relief is based: (1) ineffective assistance of counsel; (2) "unconstitutional conviction" / challenging the application of federal statutes; and (3) prosecutorial misconduct.[3] Each of Defendant's claims will be addressed *seriatim.*

### 1. Defendant's Ineffective Assistance of Counsel Claims

The United States Court of Appeals for the Third Circuit has held:

The test for ineffective assistance of counsel contains two components:

---

[3] Defendant's Motion to Vacate (ECF 107) raises four bases as follows: (1) ineffective assistance of counsel; (2) "original defense counsel obviously had a conflict of interest;" (3) "challenging the application of a statute," referencing 18 U.S.C. § 922; and (4) challenging the application of 18 U.S.C. § 924. Both (1) and (2) essentially raise an ineffective assistance of counsel claim, while (3) and (4) both raise misapplication of a statute claim. Defendant's Brief (ECF 113) and his Reply Brief (ECF 121) raise the additional issue of prosecutorial misconduct, and thus, this Court will also consider that argument.

> "First, the defendant must show that counsel's performance
> was deficient. This requires showing that counsel made
> errors so serious that counsel was not functioning as the
> 'counsel' guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the
> deficient performance prejudiced the defense. This requires
> showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable."
>
> *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. To establish deficient
> performance, a "defendant must show that counsel's representation fell
> below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct.
> 2052. In analyzing this first prong of the *Strickland* test, there is a strong
> presumption that counsel performed reasonably. *Id.* at 689, 104 S.Ct.
> 2052. To establish prejudice, the defendant "must show that there is a
> reasonable probability that, but for counsel's unprofessional errors, the
> result of the proceeding would have been different. A reasonable
> probability is a probability sufficient to undermine confidence in the
> outcome." *Id.* at 694, 104 S.Ct. 2052.

*Lewis v. Horn*, 581 F.3d 92, 106–07 (3d Cir. 2009).

In the instant case Defendant has asserted that his counsel was ineffective for several

reasons.

### a. Defendant claims he wanted to plead guilty

First, Defendant claims that he wanted to plead guilty to the charges instead of

proceeding to a jury trial in this case. The Court finds this claim to be utterly baseless and

contradicted by evidence of record.

One November 8, 2022, Defendant appeared before the Court, specifically so the Court

could inquire if he did want to proceed to trial and to ascertain if Defendant was competent and

capable of making such a decision. The Court explained the very goal of the status conference

hearing was to ascertain that Defendant fully understood the risks of going to trial as opposed to

pleading guilty or accepting a plea offer from the Government.  The relevant portions of the

discussion in which Defendant, the Court, and counsel for the Parties engaged is set forth below:

> THE COURT I want to thank everybody for coming in and doing this in person today. I hold these status conferences, sir, to convince myself that you understand the risk of proceeding to trial. I have started this practice because I've had several situations where a defendant goes to trial and then is convicted and then files one motion or other saying he didn't really understand the risk of going to trial. So that's why I do this, to make sure I'm satisfied you understand the risks of going to trial.

> \*      \*      \*

> So, as I understand the facts, is that the defendant was charged with a three-count indictment on or about August 30, 2022 at count one with possession with intent to distribute cocaine; on March 15, 2022, possession of a firearm in furtherance of a drug trafficking crime; on March 15, 2022, and count three, possession of a firearm and ammunition by a convicted felon on that same date. On behalf of the government, is that an accurate summary of the three counts?

> MR. HALLER: That's correct, Your Honor.

> THE COURT: Correct?

> MR. JAMES: Yes, Your Honor.

> THE COURT: Do you understand the three counts, sir?

> THE DEFENDANT: Yes, Your Honor.

> THE COURT: And have you had adequate time to discuss them with your attorney?

> THE DEFENDANT: Yes, Your Honor.

> \*      \*      \*

> THE COURT: On October 20, 2022, the court had a status conference and the court learned of your desire to go to trial. So the court issued a pretrial and trial order.

> \*      \*      \*

> THE COURT: And an agreed-to a verdict form has been filed. So all of that remains is the pretrial conference, jury selection and the trial itself.

And as I said, we're quite willing to try the case if that's what you wish. Today, we're here to make sure that you, as the defendant, understand fully the risk of going to trial and those three charges to this indictment. So can you – there's been -- has the defendant and counsel been given a formal plea offer?

MR. HALLER: No formal plea offer, no, Your Honor. We've had discussions, defense counsel and I, about whether a plea would be possible, but we never reached agreement. We definitely have not offered a formal plea agreement.

THE COURT: Do you have in mind what would be acceptable to the government?

MR. HALLER: We did. And I understand where defense is and there's no agreement.

THE COURT: Okay. What -- I understand that. But what I will have defense counsel put -- question the defendant to make sure he understands the full range of what happens if he's convicted. But I do want to hear from the government what his offer would look like, not binding the government to it. A defendant can't make really make an informed decision as to whether -- he can't appreciate the risks of trial if he doesn't understand, at least tentatively, where the government is.

So you can ponder that while counsel for the defendant does his work. Sir, do you understand what we're doing, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand why I'm doing it?

THE DEFENDANT: Yes, Your Honor.

MR. JAMES: Your Honor, admittedly, this is my first time colloquying my client in front of the court. I'll try to be concise and hit the main head notes.

THE COURT: Remember, we're not doing this for me, we're doing it for the defendant. Because it's important that he understands the risk of what he's facing.

MR. JAMES: Sure. Mr. Peters, are you clear headed today?

THE DEFENDANT: Yes. T

HE COURT: Speak up into the microphone.

THE DEFENDANT: Yes.

MR. JAMES: How old are you?

THE DEFENDANT: 37.

MR. JAMES: What's the extent of your education?

THE DEFENDANT: High school diploma.

MR. JAMES: Have we had the opportunity to confer in person at Butler County Prison?

THE DEFENDANT: Yes.

MR. JAMES: In addition to me in person, have I also provided you a copy of the indictment and the indictment memorandum?

THE DEFENDANT: Yes.

MR. JAMES: Did you review the indictment and the indictment memorandum?

THE DEFENDANT: Yes.

MR. JAMES: Do you recall having reviewed the indictment memorandum that the government had outlined the maximum possible penalties on the three counts that you're charged with?

THE DEFENDANT: Yes.

MR. JAMES: Do you understand that at count one, the maximum possible penalty is up to 20 years of imprisonment?

THE DEFENDANT: Yes.

MR. JAMES: Do you understand that at count two, there's a mandatory minimum of five years and up to life that is consecutive to any other term of imprisonment?

THE DEFENDANT: Yes.

MR. JAMES: Do you understand that at count three, there's a maximum term of imprisonment of up to ten years?

THE DEFENDANT: Yes.

MR. JAMES: Did you receive from me what I'll describe as a guidelines analysis?

THE DEFENDANT: Yes.

MR. JAMES: Was that dated, to the best of your recollection, as October 24, 2022?

THE DEFENDANT: Yes.

MR. JAMES: From your perspective, did that letter highlight to you different sentencing scenarios that may occur should you be convicted of all charges, acquitted of some charges, and a combination?

THE DEFENDANT: Yes.

MR. JAMES: Did I communicate to you that the government – government's counsel and I had been in preliminary talks as Mr. Haller had conveyed to Judge Schwab about a resolution of this case?

THE DEFENDANT: Yeah.

MR. JAMES: What I had conveyed to you in the way of where the government may resolve this case, was what I conveyed to you acceptable to you in terms of what you would take as a plea?

THE DEFENDANT: No.

MR. JAMES: As part of the plea letter and analysis that I had given to you, do you recognize that I had calculated guideline ranges, if convicted - - if convicted of the 922(g) felon in possession count and the drug charge, that I estimated your guidelines to be in the neighborhood of 97 to 121 months?

THE DEFENDANT: Yes.

                              *       *       *

MR. JAMES: All right. Have we talked about the risks and the benefits in going to trial?

THE DEFENDANT: Yes.

11

MR. JAMES: Have we talked about the strengths and weaknesses of the government's case?

THE DEFENDANT: Yes.

MR. JAMES: Have we talked about, in federal practice, the issue of Jencks material and Jencks witnesses?

THE DEFENDANT: Yes.

MR. JAMES: Did we have the opportunity to go over some of the trial disclosures that the government has provided to date?

THE DEFENDANT: Yes.

MR. JAMES: To date, you received from me what are called motions in limine and responses, and did we talk about that?

THE DEFENDANT: Yes.

MR. JAMES: Did we talk about the risks and benefits of proceeding to trial, exercising your constitutional right to a speedy trial, and what benefits and risks might come from that?

THE DEFENDANT: Yes.

*       *       *

MR. JAMES: Is it your desire to exercise your constitutional right to have a trial in this case?

THE DEFENDANT: Yes.

MR. JAMES: Your Honor, with that, I can't think of anything further to colloquy Mr. Peters on, but I will leave it to you.

THE COURT: Sir, what do you believe is the maximum guideline range that you might face?

THE DEFENDANT: Somewhere around ten years, Your Honor.

THE COURT: 120 months?

THE DEFENDANT: Yeah.

THE COURT: And what is your understanding as to the current offer, albeit informal, if you pled?

THE DEFENDANT: It was around seven years.

\*        \*        \*

THE COURT: So, sir, do you have any questions about anything that your counsel just put on the record?

THE DEFENDANT: No, Your Honor.

THE COURT: And you understand everything that he has said?

THE DEFENDANT: Yes, Your Honor.

THE COURT: He's answered any questions that you ever had relating to those calculations?

THE DEFENDANT: Yes, Your Honor.

THE COURT: On behalf of the government, you don't have to put anything on the record, but if you want to add anything or clarify anything, I'd be pleased to hear it.

\*        \*        \*

MR. HALLER: So the risk for Mr. Peters is something that I think that it's important for him to understand is even if he were successful and was acquitted on counts two and three, the gun counts, which I'm not predicting and we're not conceding, but even if that did happen, the likely relevant conduct calculation for what would end up being his guideline offense level could very well end up producing a guideline range substantially above 60 months.

\*        \*        \*

So it's not a question, post-trial if he's convicted at count one of, well, even if I get convicted at count one, I'm still looking at 27 months, and hey, I'm not looking at any sentence for the firearm counts, the likelihood is that from our perspective his guideline range is going to be higher than 60 months, even if he's only convicted of count one at trial. That may influence Mr. Peters' decision making, it may not, but it is a real possibility. When I say higher than 60 months, I mean it could be substantially higher than 60 months post-trial for a drug quantity relevant offense level standpoint. That's, I think, the point I would want Mr. Peters to understand.

THE COURT: Thank you. Now, I'd ask defense counsel and defendant to turn off their microphones. Would you just chat with him about what you just heard. I'm pretty confident you already shared that with him, but I want to make sure he understands what we just heard. But the microphones have to be turned away so we don't hear what you have to say. And you can have as much time as you want.

(Off the record.)

MR. JAMES: May I speak with government's counsel, Your Honor?

THE COURT: Sure.

(Off the record.)

MR. JAMES: Your Honor, I appreciate the brief opportunity to talk with government's counsel and with my client about the concept of relevant conduct. I think it's important to make a record of explaining to Mr. Peters that I and he don't necessarily know what the government has and are developing at this point. We don't know what people will testify to at trial, and if convicted, at the time of sentence. I explained to Mr. Peters the concept of relevant conduct is something that is found by Your Honor at a very low burden of proof by a preponderance of the evidence, explaining it to him that it's a burden of 51% to 49%, an ever so slight burden, essentially. . . .  And he heard Mr. Haller, that if he goes to trial and is convicted just on the drug count, that his guidelines could be substantially beyond not only 60 months, but beyond what I had calculated to him in my guidelines analysis based upon what was available to me. Understanding all of that, Mr. Peters, I believe, still desires, I don't believe -- he desires to continue to exercise his right to a speedy trial.

THE COURT: Okay. And is everything your counsel said accurate as to your understanding about relevant conduct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I want to thank counsel and defendant for taking the time to put all this on the record. It's really important that I feel comfortable the defendant has a complete and full knowledge of the risks involved, and I am satisfied by his answers under oath that he does.

ECF 116, p. 3-4, 6-9, 11-14, 17-20.

Given the dialogue from the November 8, 2022, status hearing, the Court determines that Defendant's own admissions and statements during this hearing reveals his willingness and <u>desire</u> to proceed to trial and not plead guilty, which thus belies his first argument for ineffective assistance of counsel.[4] Thus, the Court finds no merit in this ineffective assistance of counsel argument.

### b. Defendant claims his counsel had a conflict of interest

Defendant's second argument with respect to ineffective assistance of counsel suggests that his attorney had a conflict of interest and/or an ulterior motive for allegedly advising Defendant to proceed to trial as opposed to pleading guilty. However, Defendant has proffered no evidence demonstrating his attorney's purported conflict of interest nor any evidence of an ulterior motive.

The Sixth Amendment provides a defendant with a right to an attorney with undivided loyalties, meaning no conflicts of interest. *Wheat v. United States*, 486 U.S. 153 (1988). The United States District Court for the Eastern District of Pennsylvania further explained conflict-free representation as follows:

> This [Sixth Amendment] right exists to assure that the government is put to its proofs in an adversarial manner, that is, the government is required to prove the defendant guilty beyond a reasonable doubt in the face of a vigorous defense. The right to conflict-free representation assumes that defense counsel cannot put on a vigorous defense if he or she has a conflict of interest, that is why the presumption of one's right to counsel . . . is overcome by a showing of an actual conflict of

---

[4] To the extent that Defendant is attempting to argue that his attorney supposedly failed to adequately assess the strength of the Government's case against Defendant, the Court finds this argument to be conclusory in nature. Importantly, as the above colloquy demonstrates, Defendant was questioned about the pretrial motions that were filed on his behalf as well as the Government's to same, the "Guidelines analysis" letter that his attorney sent to him outlining (among other things) the Guideline range he faced if convicted, and the mandatory minimum sentence of five years consecutive to any other sentence he would receive, if convicted. The Court finds that this colloquy between Defendant and his attorney demonstrates that Defendant was well-informed about all the possible outcomes should he choose to plead guilty or proceed to trial. Moreover, Defendant has proffered nothing to suggest otherwise.

> interest or a serious potential conflict of interest. However, where there is no
> actual conflict of interest, there simply cannot be a violation of the defendant's
> Sixth Amendment right to the effective assistance of counsel because there is no
> chance that defendant's defense could be jeopardized by an attorney who could
> not fully defend his client due to a conflict of interest.

*United States v. Patrick*, 985 F. Supp. 543, 554 (E.D. Pa. 1997), aff'd, 156 F.3d 1226 (3d Cir. 1998).

Defendant needed to demonstrate for the Court how and when his counsel demonstrated that any sort of "divided loyalties" creating a conflict of interest, and/or at some point placed some self-interest above that of Defendant's own interests. Because Defendant failed to present any evidence along these lines,[5] and because the above transcript demonstrates Defendant, while under oath, expressed his own choice and decision to proceed to trial, the Court finds no merit in this ineffective assistance of counsel argument.

### c. Defendant claims his counsel failed to move to suppress evidence

Defendant also contends that he "ordered" his attorney "on numerous occasions" to hire a private investigator and file a motion to quash the indictment due to an alleged illegal search of his residence on September 6, 2016, and to obtain the bodycam footage of the search of his residence. Defendant contends his attorney, by failing challenge the search of his residence and failing to secure bodycam footage taken during the search of his residence, was ineffective.

As explained by the Court of Appeals for the Third Circuit:

> "*Strickland* teaches that a court deciding any ineffectiveness claim must
> 'determine whether, *in light of all the circumstances,* the identified acts or
> omissions [of counsel] were outside the wide range of professionally
> competent assistance.' " *Jacobs,* 395 F.3d at 106 (quoting *Strickland,* 466
> U.S. at 690, 104 S.Ct. 2052).

---

[5] Defendant did submit a self-serving affidavit, attaching it to his reply brief. This document does not constitute evidence or proof of his attorney's alleged conflict of interest or any sort of divided loyalty.

> Courts have routinely declared assistance ineffective when the record reveals that counsel failed to make a crucial objection or to present a strong defense solely because counsel was unfamiliar with clearly settled legal principles. *See Cofske v. United States,* 290 F.3d 437, 443(1st Cir. 2002) ("[C]ourts tend to be somewhat less forgiving where counsel altogether overlooks a possible objection or opportunity."). "[T]he defendant is most likely to establish incompetency where counsel's alleged errors of omission or commission are attributable to a lack of diligence rather than an exercise of judgment."

*Thomas v. Varner*, 428 F.3d 491, 501 (3d Cir. 2005) (some internal citations omitted).

Defendant, here, did not explain or proffer any evidence demonstrating what made the search of his residence purportedly illegal; nor did Defendant explain how his lawyer's professional decision not to file a Motion to Suppress was outside the range of professionally competent assistance. Merely arguing that is attorney should have done so is conclusory, and because Defendant offers the Court nothing more, his claim for ineffective assistance of counsel falls short meeting the required standards, and thus, the Court finds no merit to this argument.

### d. Failing to object to the composition of the jury

Defendant's final argument with respect to ineffective assistance of counsel is that his attorney failed to object to the racial composition of the jury. This argument fails for two reasons: first it assumes that a different jury composition would have yielded a different verdict, and second, the argument fails the second portion, *i.e.,* the prejudice portion of the two-part *Strickland* test.

With respect to Defendant's assumption that the jury panel was racially biased against him and his claim that his attorney, in failing to raise a *Batson* challenge, was therefore ineffective, Defendant offers no support that his attorney's challenge to the jury composition would have: (1) yielded a new composition; and (2) a differently composed jury would yield a different verdict. Thus, the Court finds that Defendant's jury-challenge argument has no merit.

Secondly, in order to meet the second prong of the two-part *Sttrickland* test, Defendant needed to demonstrate to this Court how his attorney's failure to challenge the jury prejudiced him. To show prejudice, the Defendant needed to demonstrate to this Court the reasonable probability that a different jury would have arrived at a different verdict. Defendant failed to do so and therefore, this argument fails for this reason.

### 2. Defendant's "Unconstitutional Conviction" Claims

Defendant's "unconstitutional conviction" challenges are predicated upon his interpretation of various federal statutes. The Government, citing the procedural default rule, argues that his challenges are misplaced in this § 2255 Motion because Defendant needed raise these claims on direct appeal to the United States Court of Appeals for the Third Circuit. *See, Bousley v. United States,* 523 U.S. 614, 622 (1998).

The Court notes that although the Government is correct, there are exceptions to procedural default. A defendant may raise a procedurally defaulted claim if he shows actual innocence of the crime, or if he shows cause for the default and prejudice to him from the default. *United States v. Harris*, 205 F. Supp. 3d 651, 658 (M.D. Pa. 2016). *See also, Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) and *Bousley*. 523 U.S. at 622.

Turning to the instant matter, Defendant offers no explanation as to why these claims were not previously raised before the Court of Appeals. In addition, even if a cause existed to withhold these claims from the Court of Appeals, Defendant offers no explanation how he was prejudiced.

In addition to being convicted of possession with intent to distribute cocaine, Defendant was convicted of possession of a firearm in furtherance of a drug trafficking crime, in violation

of 18 U.S.C. § 924(c)(1)(a)(i), and possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g).

With respect to his § 924 conviction, Defendant contends in his reply brief that because he merely possessed the weapon and did not brandish the weapon, claiming that because there was "no violence or any indication of violence," his conviction should be overturned. However, "violence" as Defendant is defining it is not required to be legally convicted under § 924. It is enough to be found guilty of § 924 by merely possessing the firearm in furtherance of drug trafficking crime, as Defendant was found guilty of doing in this case. Thus, Defendant cannot support his claim with respect to his § 924 conviction.

Turing to Defendant's § 922(g) conviction (and to some extent his § 924 as well), Defendant argues that *Bruen* and its progeny entitled him to possess a firearm and thus, his conviction under these statutes was erroneous. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  However, the Court of Appeals for the Third Circuit has expressly held that the *Bruen* decision does <u>not</u> support that an individual may possess a firearm while: (1) in furtherance of a drug trafficking crime, and (2) after being convicted of a felony. *Pitsilides v. Barr*, 128 F.4th 203, 211 (3d Cir. 2025). Following the *Range* and *Bruen* decisions, the Court of Appeals made it clear that while law abiding citizens may certainly exercise their rights to possess a firearm, those who have been previously convicted of felonies typically do not fall into the law-abiding category. There can be exceptions, of course, such as the Defendant in *Range II,* who (as the Government conceded) had committed a non-violent felony ($2,600 in food stamp fraud) over thirty years earlier, had lived an essentially law-abiding life since that time, had no history of violence, had never knowingly violated § 922(g)(1)'s prohibition, posed no risk of danger to the public, and actively sought permission to possess a firearm by filing a declaratory

judgment action.  However, in the instant case, Defendant's criminal history and his conduct in the interim bears no resemblance to the facts present in *Range II.*

In sum, for the reasons set forth above, the Court finds that Defendant is both procedurally and substantively barred from raising his "unconstitutional conviction" claims, and the Court will not grant him relief on those grounds.

### 3. Defendant's "Prosecutorial Misconduct" Claims

Defendant raised a "shifting the burden of proof" argument in his appeal to the Court of Appeals. In this argument, Defendant essentially argues that the Government suggested to the jury that it did not have prove Defendant's guilt beyond a reasonable doubt, but rather, Defendant had to prove his innocence. Defendant's argument in this regard is and was predicated upon Government's question inquiring if evidence seized at Defendant's residence was made available for testing by Defendant.

As the Government correctly notes, the Court of Appeals has already heard Defendant's argument on this discreet matter and has denied him relief.  Defendant may not re-raise that issue before this Court in this § 2255 Motion. *United States v. Dobbin,* 147 F.4th 333, 344 (3d Cir. 2025) (It is true that a § 2255 petitioner generally may not relitigate issues that were adjudicated on direct appeal.)  Accordingly, because the Court of Appeals has already considered this matter, Defendant's request for relief on this basis will be denied.

**IV. CONCLUSION**

Based on the foregoing law and authority, Defendant has failed to raise a basis upon which relief could be granted and thus, his § 2255 Motion will be denied. An appropriate Order follows.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties